

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Burnett Plaza, 801 Cherry Street, Suite 1900, Unit 18
Fort Worth, TX 76102

Fort Worth
Regional Office

January 16, 2024

<u>Via ECF</u>

The Honorable Carol Bagley Amon
United States District Court Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Securities and Exchange Commission v. Schueler, et al.*, 1:23-cv-05749-CBA-PK

Dear Judge Amon,

Plaintiff Securities and Exchange Commission ("SEC" or the "Commission") respectfully responds to Defendant Richard Heart's ("Heart") request for a pre-motion conference in connection with his anticipated motion under Fed. R. Civ. P. 12(b), ECF No. 13 ("Letter"). In an attempt to obtain dismissal, Heart seeks to minimize his role in a billion-dollar offering and a multi-million dollar fraudulent scheme to that of sideline commentator to a global community of people who have simply chosen to run certain computer programs. This distortion of the SEC's well-pled allegations cannot be the basis for dismissal under Rule 12. Among other things, the SEC sufficiently alleges that Heart developed, released, and extensively promoted the crypto-asset securities at the center of this global community of investors; owns and controls the relevant websites; and pools and controls investor funds, millions of which he has misappropriated.

**I.   The Court has personal jurisdiction over Defendants, who were properly served.** The Due Process Clause permits a court to exercise specific personal jurisdiction over a non-resident defendant that has "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (citation omitted). The Complaint alleges that Defendants specifically accepted investments from residents of the United States, designed their trading platform to be a fork of Uniswap (a trading platform based in the United States), encouraged purchases of Hex tokens through Uniswap, and made extensive use of social media such as YouTube to pitch investors all over the world, including in the United States. The allegations constitute more than the minimum contacts needed to satisfy traditional notions of fair play. *See, e.g.*, *SEC v. PlexCorps*, 2018 WL 4299983 at *10, 19 (E.D.N.Y. Aug. 9, 2018) (personal jurisdiction over a crypto asset founder that did "business while traveling in the United States, utilizing United States–based payment services, and marketing their products to United States consumers").

Additionally, while Heart summarily claims that service on him was insufficient, the Finland Ministry of Justice, that country's "Central Authority" under the Hague Convention, provided the SEC with a certificate of service "in conformity with Article 6 of the Convention." (Dkt. 11 at Ex. A). This is *prima facie* evidence of sufficient service. *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC,* 2018 WL 4681616, at *7-8 (S.D.N.Y. Sep. 11, 2018).

**II.     Defendants' 12(b)(6) motion will fail.**   Defendant Heart sets forth several areas in which he intends to attack the Commission's Complaint under Rule 12(b)(6). None are availing and the SEC responds to each in turn below.

   **a. Heart's extraterritoriality arguments fails.**  Heart's claims that the SEC's allegations are impermissibly extraterritorial under *Morrison v. Nat'l Austl. Bank Ltd.*, 562 U.S. 247 (2010) are unavailing. *Morrison* held that the antifraud provisions of the federal securities laws reach only "domestic transactions" in securities. Congress, however, overrode *Morrison* with respect to antifraud enforcement actions by the SEC, providing instead that a "conduct-and-effects" test applies to determine whether an action is within the reach of the federal securities laws. *See* 15 U.S.C. § 77v(c); *see also SEC v. Scoville*, 913 F.3d 1204, 1218 (10th Cir. 2019) ("Congress undoubtedly intended that the substantive antifraud provisions should apply extraterritorially" pursuant to these revisions); *Liu Meng-Lin v. Siemens AG*, 763 F.3d 175, 181 (2d Cir. 2014) (recognizing that Dodd Frank changed the law to be applied in SEC enforcement actions under Section 10(b)). Here, in selling securities to U.S. residents and designing a scheme to employ a trading platform whose developers are in the U.S., Heart's conduct had the effect of creating an American market for his securities sufficient to meet that test.

   Nor does the *Morrison* transaction-based test govern whether Heart "offered" or "sold" securities in the U.S. in unregistered transactions, violating Section 5 of the Securities Act of 1933. That provision governs the entire selling process, not just particular transactions, and can be violated by those who promote, create, or facilitate a market for securities in the U.S., regardless of where a "transaction" occurred. *See* Regulation S, Rule 901, 17 C.F.R. § 230.902(h)(1). Accordingly, Heart's objections about extraterritoriality do not reach the Commission's claims under Section 5.

   **b. Defendants offered securities.**  Heart argues that he did not offer or sell "investment contracts" because the SEC has not alleged that the crypto assets at issue involved common law "contracts." Even assuming the SEC's allegations were so limited, Heart's position that a common law contract is required is wrong. The Supreme Court has defined an "investment contract" as any "contract, *transaction, or scheme* whereby a person invests his money, in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-299 (1946) (emphasis added). "There need not be – contrary to defendants' assertions – a formal common-law contract between transacting parties for an 'investment contract' to exist." *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 4858299 at *11 (S.D.N.Y., July 31, 2023). Even the case cited by Heart, *SEC v. Edwards*, recognizes that "[t]he test for whether a particular *scheme* is an investment contract was

2

established in [the Supreme Court's] decision in [*Howey*]." 540 U.S. 389, 393 (2004) (emphasis added).

**c. The Complaint alleges fraud with the specificity required by Rule 9(b).** PulseChain and Heart violated the antifraud provisions of the federal securities laws by misappropriating at least $12.1 million of PulseChain investment proceeds for Heart's personal whims, including the purchase of luxury watches, high-end automobiles, and "The Enigma" diamond. As alleged in the Complaint, Heart repeatedly informed the public (1) about the development tasks that needed to be completed before PulseChain could be released and (2) that investment in PulseChain supported free speech ideals. Meanwhile, Heart never disclosed that he was actually using PulseChain investor funds, not for the development and marketing of the PulseChain network, but for his own luxury purchases. A reasonable investor would have wanted to know about this direct misappropriation of invested funds. *See SEC v. Zandford*, 535 U.S. 813, 819-20 (2002) (misappropriation of the proceeds of a securities transaction to pay one's personal expenses constitutes a fraudulent scheme under the antifraud provisions of the Exchange Act); *SEC v. Boock*, 2011 WL 3792819, at *22-23 (S.D.N.Y. Aug. 25, 2011) (scheme liability extends to misappropriated assets).

**d. The major questions doctrine does not warrant dismissal.** Heart misapprehends the purpose and reach of the major questions doctrine in claiming (Letter at 3) that it requires dismissal. The doctrine is rooted in "separation of powers concerns" and constrains agencies' "regulatory assertion[s]" of authority. *E.g.*, *Biden v. Nebraska*, 600 U.S.__, 143 S. Ct. 2355 (2023). This case, by contrast, involves the SEC's exercise of its clearly granted and longstanding authority to enforce statutory requirements, which the SEC has exercised since its inception. *See* 15 U.S.C. §§ 77t(b), 78u(d)(1). Nor is Heart correct that, with this action, the "SEC seeks to impose its will on the $2 trillion digital asset industry." (Letter at 3). The SEC simply seeks redress for Heart's violations, for which "lawsuit is the ultimate remedy." *United States v. Texas*, 599 U.S. 670, 679 (2023).

**e. The Complaint violates no constitutional rights to speech and association.** Contrary to Heart's characterizations, the SEC does not wish to impose a content-based regulation of computer code or any protected speech. (Letter at 3). Nor does the SEC seek to punish Heart for "discussing open-source, peer-to-peer communications software." (*Id.*). The SEC is tasked with enforcing the federal securities laws, which it alleges that Defendants violated with an unregistered offering of securities and by misappropriating investor funds. This action does not curtail any protected speech and, in any event, the Commission's compelling interest in protecting the integrity of the securities markets would suffice. The SEC's mission—ensuring that prospective investors receive full disclosure of all material facts necessary for them to make an informed investment decision—tends toward more (not less) speech, in the form of registration statements and material disclosures when the law requires, to further educate investors.

Dated: January 16, 2024            Respectfully submitted,

*/s/ Matthew J. Gulde*
MATTHEW J. GULDE
Illinois Bar No. 6272325
United States Securities and Exchange Commission
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
Ph: 817-978-3821
Fax: 817-978-4927
guldem@sec.gov

ATTORNEY FOR PLAINTIFF UNITED STATES
SECURITIES AND EXCHANGE COMMISSION

cc:

QUINN EMANUEL URQUHART & SULLIVAN LLP
Samuel P. Nitze
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
samuelnitze@quinnemanuel.com

Michael Liftik
Nicholas Inns
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202)538-8000
Facsimile: (202)538-8100
michaelliftik@quinnemanuel.com
nicholasinns@quinnemanuel.com

Kristin Tahler
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
kristintahler@quinnemanuel.com

CLARK SMITH VILLAZOR LLP
Patrick J. Smith
Jeffrey D. Rotenberg
Brian T. Burns
250 West 55th Street, 30th Floor
New York, New York 10019
Telephone: (212) 582-4400
patrick.smith@csvllp.com
jeffrey.rotenberg@csvllp.com
brian.burns@csvllp.com

KIRK & INGRAM, LLP
David E. Kirk
43 West 43rd Street, Suite 279
New York, NY 10036
Telephone: (212)859-3504
dkirk@kirkingram.com

Michael W. Ingram
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
Telephone: (310)487-0270
mingram@kirkingram.com

GRAY REED & McGRAW LLP
Chris Davis
Joshua Smeltzer
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (469) 320-6215
Facsimile: (469) 320-6926
cdavis@grayreed.com
jsmeltzer@grayreed.com