

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Burnett Plaza, 801 Cherry Street, Suite 1900, Unit 18
Fort Worth, TX 76102

Fort Worth
Regional Office

April 9, 2024

<u>Via ECF</u>

The Honorable Peggy Kuo
United States Magistrate Judge
United States District Court for the Eastern District of New York

Re: *Securities and Exchange Commission v. Schueler, et al.*, 1:23-cv-05749-CBA-PK

Dear Judge Kuo,

On August 22, 2022, the Securities and Exchange Commission ("SEC" or the "Commission") personally served Richard Schueler, aka Richard Heart ("Heart"), with subpoenas at the Miami International Airport. The subpoenas required him to produce documents (on behalf of Heart and Hex) and to appear for testimony in connection with Hex, the crypto asset he developed and sold. Heart has never responded to the SEC's lawful subpoenas. Now, to continue stalling discovery in the SEC's litigation against him, Heart asks the Court to stay all discovery pending the resolution of his anticipated motion under Fed. R. Civ. P. 12(b) (Dkt. 34, "Letter").

"[T]he mere filing of a motion to dismiss the complaint does not constitute 'good cause' for the issuance of a discovery stay." *Port Dock & Stone Corp. v. Oldcaster Ne., Inc.*, No. CV 05-4294 DRH ETB, 2006 WL 897996, at *1 (E.D.N.Y. Mar. 31, 2006) (citations omitted). To determine whether there is good cause for a stay, courts have considered: "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Id.* (citing *In re Currency Conversion Fee Antitrust Litigation*, No. MDL 1409, M21–95, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002)). As discussed below, staying discovery would be highly prejudicial to the SEC, particularly given (i) Heart's longstanding effort to block the production of documents or testimony, (ii) that the SEC's claims are far from "unmeritorious," and (iii) that discovery will not present an undue burden to anyone.

### I.   The Court has personal jurisdiction over Defendants.

As discussed in the SEC's response to Heart's first pre-motion letter, this Court has personal jurisdiction over the Defendants as alleged in the Complaint. (Dkt. 24). The Due Process Clause permits a court to exercise specific personal jurisdiction over a non-resident defendant that has "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (citation omitted). Heart apparently concedes that there were U.S. investors in Hex, PulseX, and PulseChain, arguing instead that the Complaint does not allege that he personally set foot in the United States or undertook other specific U.S. contacts. (Letter, p. 2). Not only did Heart solicit and accept investments from

investors in the United States, (Complaint, ¶¶ 18, 29, 34, 55, 60, 64), but he also made extensive use of websites and social media such as YouTube to pitch investors all over the world, including in the United States. (*Id., passim*). Indeed, an estimate of website traffic indicates that U.S. users represented more than one-third of all Hex website traffic during the Hex offering, far exceeding traffic from any other country. Additionally, Heart engaged with at least one individual in the U.S. to develop the software supporting the Hex ecosystem. The allegations constitute more than the minimum contacts needed to satisfy traditional notions of fair play. *See, e.g.*, *SEC v. PlexCorps*, 2018 WL 4299983 at *10, 19 (E.D.N.Y. Aug. 9, 2018) (exercising personal jurisdiction over a crypto asset founder charged with unregistered sales of crypto asset securities and fraud because the founder did "business while traveling in the United States, utilizing United States–based payment services, and marketing their products to United States consumers"); *SEC v. Terraform Labs Pte Ltd.*, No. 22-368, 2022 WL 2066414, at *3 (2d Cir. June 8, 2022), cert. denied sub nom. *Terraform Labs Pte Ltd. v. SEC*, 143 S. Ct. 1020, 215 L. Ed. 2d 188 (2023) (citing U.S. end users in upholding personal jurisdiction over foreign defendant that was under investigation by the SEC for unregistered sales of crypto asset securities and fraud); *see also Christian Music Grp., Inc.*, 844 F.3d at 98 (exercising specific personal jurisdiction because non-resident was aware that his company provided services to users in the forum).

## II.   Heart's extraterritoriality arguments fail.

Heart's claims that the SEC's allegations are impermissibly extraterritorial under *Morrison v. Nat'l Austl. Bank Ltd.*, 562 U.S. 247 (2010) are also unavailing. *Morrison* held that the antifraud provisions of the federal securities laws reach only "domestic transactions" in securities. Congress, however, overrode *Morrison* with respect to antifraud enforcement actions by the SEC, providing instead that a "conduct-and-effects" test applies to determine whether an action is within the reach of the federal securities laws. *See* 15 U.S.C. § 77v(c); *see also SEC v. Scoville*, 913 F.3d 1204, 1218 (10th Cir. 2019) ("Congress undoubtedly intended that the substantive antifraud provisions should apply extraterritorially" pursuant to these revisions); *Liu Meng-Lin v. Siemens AG*, 763 F.3d 175, 181 (2d Cir. 2014) (recognizing that Dodd Frank changed the law to be applied in SEC enforcement actions under Section 10(b)). Here, Heart's fraud is within the scope of the U.S. securities laws for many reasons. Most saliently, in selling securities to U.S. residents and designing a scheme to employ a trading platform whose developers are in the U.S., Heart's conduct had the effect of creating a U.S. market for his securities and of harming U.S. investors, each alone sufficient to meet the conducts-and-effects test.

Nor does the *Morrison* transaction-based test govern whether Heart "offered" or "sold" securities in the U.S. in unregistered transactions, violating Section 5 of the Securities Act of 1933. Section 5 governs the entire selling process, not just particular transactions, and can be violated by those who promote, create, or facilitate a market for securities in the U.S., regardless of where a "transaction" occurred. *See* Regulation S, Rule 901, 17 C.F.R. § 230.902(h)(1). Accordingly, Heart's objections about extraterritoriality as to the Commission's claims under Section 5 are also unavailing. *See also Williams v. Binance*, 96 F.4th 129, 133 (2d Circ. 2023) (holding complaint sufficiently pled certain unregistered transactions in crypto asset securities were domestic transactions, because the parties became bound in the United States under *Morrison* and

its progeny, based in large part on the fact that the investors were in the United States when they placed their buy orders and because the defendant sought to avoid jurisdiction anywhere by avoiding registration requirements); *but see SEC v. Ripple Labs, Inc.*, No. 20-CIV-10832 (AT)(SN), 2022 WL 762966, at *13 (S.D.N.Y. Mar. 11, 2022) (nevertheless denying individual defendants' motion to dismiss claims of unregistered sales under *Morrison*).

### III. Delaying discovery would further prejudice the SEC.

Arguing that a discovery stay would not prejudice the SEC, Heart speculates that "[t]he SEC likely used numerous investigative subpoenas" to obtain evidence and therefore has diminished need for further discovery at this time. (Letter, p. 3). Inexplicably, Heart fails to mention the subpoenas the SEC served on him (personally and on behalf of Hex) in Miami more than 19 months ago. (Aug. 22, 2022 Subpoenas, attached as Exhibits A and B). Likewise, he fails to mention that he has never responded to those lawfully issued subpoenas, failing both to produce the required documents and to appear for testimony. The August 2022 subpoenas required Heart to produce materials that would be centrally relevant to this litigation. (*Id*. at numbered p. 4). Further delaying the SEC's access to materials that it has sought for more than 19 months would continue to prejudice the SEC.

Moreover, Heart did not just ignore the SEC's subpoenas. On November 3, 2022, two months after being served with the SEC's subpoenas, Heart advised his Twitter followers, many of whom are self-described "Hexicans," "Do you accept the good advice you're given? You think you do, but do you really? Are you using secret chats with self destruct timers? Or are you a slow learner? Is it hard for you to click buttons?" (Nov. 4, 2022 Tweet, attached as Exhibit C). Freshly served with two SEC subpoenas, Heart confirmed personal data practices that tend toward spoliation. The SEC is at risk of continued prejudice if discovery is not allowed to proceed here.

### IV. Beginning discovery would neither unduly burden parties nor prejudice third parties.

Heart asserts that allowing discovery would present an undue burden on him, claiming that "[t]his case is particularly complex." (Letter, p. 2). In support of this claim, Heart cites *Telesca v. Long Island Hous. P'ship, Inc.*, a case involving "six defendants, including two towns, two not-for-profit corporations, and a state agency." No. CV 05-5509(ADS)(ETB), 2006 WL 1120636, at *2 (E.D.N.Y. Apr. 27, 2006). This case, on the other hand, has a single human defendant who does business through his three unincorporated alter-egos, Hex, PulseX, and PulseChain. Any documents, interrogatory responses, and admissions that the SEC seeks from a party in this case can be provided by one person: Richard Heart. Moreover, Heart has hired able counsel, including former SEC staff, to represent him. Finally, the questions presented in the SEC's claims are not particularly complex: (1) did Richard Heart and his alter egos conduct an offering of unregistered securities? and (2) did Richard Heart and his alter ego PulseChain defraud investors by using investor funds for luxury purchases rather than to develop the platform? From a procedural and discovery point of view, this is a securities registration and fraud case that does not present a level of complexity that would weigh towards further delaying discovery.

Page 3

Dated: April 9, 2024				Respectfully submitted,

*/s/ Matthew J. Gulde*
MATTHEW J. GULDE
Illinois Bar No. 6272325
United States Securities and Exchange Commission
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
Ph: 817-978-1410
Fax: 817-978-4927
guldem@sec.gov

Ben Kuruvilla
United States Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004
Ph: 212-336-5599
kuruvillabe@sec.gov

ATTORNEY FOR PLAINTIFF UNITED STATES
SECURITIES AND EXCHANGE COMMISSION

cc:

QUINN EMANUEL URQUHART & SULLIVAN LLP
Samuel P. Nitze
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
samuelnitze@quinnemanuel.com

Michael Liftik
Nicholas Inns
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202)538-8000
Facsimile: (202)538-8100
michaelliftik@quinnemanuel.com
nicholasinns@quinnemanuel.com

Kristin Tahler
865 S. Figueroa St., 10th Floor

CLARK SMITH VILLAZOR LLP
Patrick J. Smith
Jeffrey D. Rotenberg
Brian T. Burns
250 West 55th Street, 30th Floor
New York, New York 10019
Telephone: (212) 582-4400
patrick.smith@csvllp.com
jeffrey.rotenberg@csvllp.com
brian.burns@csvllp.com

KIRK & INGRAM, LLP
David E. Kirk
43 West 43rd Street, Suite 279
New York, NY 10036
Telephone: (212)859-3504
dkirk@kirkingram.com

Michael W. Ingram
100 Wilshire Blvd., Suite 700

<div style="display: flex;">
<div>
Los Angeles, CA 90017  
Telephone: (213) 443-3000  
Facsimile: (213) 443-3100  
kristintahler@quinnemanuel.com  

GRAY REED & McGRAW LLP  
Chris Davis  
Joshua Smeltzer  
1601 Elm Street, Suite 4600  
Dallas, Texas75201  
Telephone: (469) 320-6215  
Facsimile: (469) 320-6926  
cdavis@grayreed.com  
jsmeltzer@grayreed.com  
</div>
<div>
Santa Monica, CA 90401  
Telephone: (310)487-0270  
mingram@kirkingram.com  
</div>
</div>