1          UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF NEW YORK (BROOKLYN)

3   SECURITIES AND EXCHANGE
    COMMISSION,                        Case No. 1:23-cv-05749-CBA-PK
4
                    Plaintiff,
5                                      Brooklyn, New York
    v.                                 April 11, 2024
6                                      10:42 a.m.
    RICHARD J. SCHUELER, a/k/a
7   Richard Heart, et al,

8                 Defendants.

9

10            TRANSCRIPT OF INITIAL CONFERENCE HEARING
           BEFORE THE HONORABLE PEGGY KUO
11            UNITED STATES MAGISTRATE JUDGE

11  APPEARANCES:
12  For the Plaintiff:            Matthew Gulde, Esq.
                                  Securities and Exchange
13                                Commission
                                  801 Cherry St.
14                                Ste. 1900
                                  Fort Worth, TX 76102
15
                                  Ben Kuruvilla, Esq.
16                                Securities and Exchange
                                  Commission
17                                100 Pearl Street
                                  Ste 20-100
18                                New York, NY 10004

19  For the Defendant:           Michael E. Liftik, Esq.
                                  Quinn Emanuel Urquhart &
20                                Sullivan, LLP
                                  1300 I Street NW
21                                Suite 900
                                  Washington, DC 20005
22
                                  Kristin Tahler, Esq.
23                                Quinn Emanuel Urquhart &
                                  Sullivan, LLP
24                                865 S. Figueroa Street
                                  Ste 10th Floor
25                                Los Angeles, CA 90017

1

APPEARANCES (continued):

2                                    Samuel P. Nitze, Esq.
                                     Quinn Emanuel Urquhart &
3                                    Sullivan, LLP
                                     51 Madison Ave
4                                    New York, NY 10010

5                                    David E. Kirk, Esq.
                                     Kirk & Ingram, LLP
6                                    43 West 43rd St.
                                     Suite 279
7                                    New York, NY 10036

8                                    Patrick J. Smith, Esq.
                                     Clark Smith Villazor LLP
9                                    250 West 55th Street, 30th Floor
                                     New York, NY 10019

10

    Clerk:                          RO
11
    Court Recorder:                 Electronic Sound Recording
12
    Transcription Service:          Chris Hwang
13                                   Abba Reporting
                                     PO Box 223282
14                                   Chantilly, Virginia  20153
                                     (518) 302-6772
15

16

17

18

19

20

21

22

23

24  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.
25

1          (Call to order at 10:42 a.m.)

2          THE CLERK:  This is civil cause for initial

3    conference, docket 23-CV-5749, Securities and Exchange

4    Commission v. Richard J. Schueler, et al, Magistrate Judge

5    Peggy Kuo presiding.

6          Parties present please state their appearances

7    beginning with Plaintiff?

8          MR. GULDE:  Good morning, Your Honor, Matt Gulde for

9    Plaintiff SEC.

10          MR. KURUVILLA:  Good morning, Your Honor, Ben

11    Kuruvilla for the SEC.

12          MR. LIFTIG:  Good morning, for Plaintiff Richard

13    Heart, Michael Liftig from Quinn Emanuel Urquhart & Sullivan.

14    And I have a number of colleagues here.  Kristin Tahler also

15    from Quinn Emanuel and Sam Nitze also from Quinn Emanuel.  And

16    I'll let my co-counsel introduce themselves.

17          MR. KURUVILLA:  David Kirk, Kirk & Ingram for

18    Defendant Richard Heart.

19          MR. SMITH:  Patrick Smith, Clark Smith Villazor for

20    Defendant Richard Heart.  Good morning, Your Honor.

21          THE COURT:  Good morning, everyone.  This is an

22    initial conference before me.  I know that there are other

23    procedural matters pending, but I would like to just give

24    everybody an opportunity to tell me a little bit more about

25    what the case is about in short.

1          And then, I know there's a motion to stay discovery,

2    so we can talk about that as well.  But like I said, since it's

3    an initial conference, I'll just hear from the -- each of the

4    parties what you think are the important factual procedural

5    legal issues that we need to pay attention to as we move

6    forward.

7          And then, we'll get to the immediate issues at hand.

8    So Mr. Gulde, why don't you start?

9          MR. GULDE:  Sure, Your Honor.  May I address you from

10   sitting here?

11         THE COURT:  Yes, as long as you're talking into the

12   microphone so that it can be picked up.

13         MR. GULDE:  This is a case that the SEC brought last

14   summer against Defendant Richard Heart, who is apparently in

15   Helsinki, Finland.  Also included with him in the caption are

16   Hex, PulseChain, and PulseX.  We've described those as

17   unincorporated alter ego entities of Mr. Heart.

18         This case is about Richard Heart developing Hex,

19   PulseChain, and PulseX crypto asset securities and raising

20   roughly a billion dollars.

21         And so -- in so doing, he raised this money from

22   investors all over the world, but including the United States.

23   He engaged at least one developer, possibly more in the United

24   States, to develop the crypto currencies and platforms.  And he

25   targeted American investors and received investment from

1    American investors in amassing that billion dollars.

2         So this is a case about the unregistered offer and

3    sale of securities in those three forms in selling Hex, in

4    selling PulseX, in selling PulseChain, and their related tokens

5    of the same -- we can call them the same names Hex, PulseX,

6    PulseChain or Pulse related to PulseChain.

7         It's also a case about Richard Heart and through

8    PulseChain defrauding the investors in PulseChain.  In

9    the -- in raising, let's see, more than $300 million from

10   PulseChain investors, Mr. Heart used millions of that money

11   directly from investors in PulseChain for his own luxury

12   purposes, buying fancy cars, buying fancy watches.

13        We're able to trace those purchases that went through

14   a complicated crypto currency mixer to apparently to disguise

15   the comings and goings of those assets, but they went to

16   purchase luxury items for him.

17        We're here today under the procedural stance that we

18   are because we haven't been able to come to an agreement about

19   whether discovery ought to move forward.

20        One big reason we haven't is because during the

21   investigative stage, we were -- the SEC was able to serve Mr.

22   Heart in a Miami airport with a subpoena during the

23   investigative stage.

24        That subpoena lawfully requested documents from him

25   related to the development, the rollout of Hex, where's the

money, what did you with the money, where did the money come

from, who did you pay to develop this thing, all those sorts of

questions.

He ignored that subpoena.  So the SEC had a choice at

that point.  And I'll also say that in addition to Mr. Heart

ignoring that subpoena, the SEC served several subpoenas to

people we believed to be promoters and developers of Hex.  And

they also with very few exceptions ignored those subpoenas.

So, at that point in the late summer of '22, the SEC

could have gone forward with a bunch of miscellaneous actions

to try to compel or to move forward with what we had.

You see in the complaint the results of moving

forward with what we had.  We believe that there is more to

know here and that the interests of the public favor moving

forward with discovery to develop the more fulsome picture of

the story of Richard Heart, Hex, PulseX, and PulseChain.  So

that's our nutshell.

THE COURT:  Uh-huh, okay, thank you.  So I'll hear

from the Defendants.

MR. LIFTIK:  Thank you, Your Honor.  Obviously, we

vigorously dispute the characterization of the facts, but I

want to focus on just a few items.

First of all, counsel repeatedly used the word

investors.  We reject that and that actually basically presumes

the precise question that's at issue in this case, which is

1    whether or not these tokens are in fact securities under the

2    federal securities laws.

3            It is very clear from the record that this is not a

4    case where money was raised from traditional investors, venture

5    investors, or offer, you know, private investors and then a

6    platform was a built.

7            In other words, one critical distinction that this

8    case has from many of the other crypto cases that is not clear

9    from Mr. Gulde's presentation is that this is not an ICO case,

10   an initial coin offering case.  This is not a case where sums

11   of money were raised, a platform was built, and then it was

12   later launched.

13           Hex was launched fully built before a nickel flowed

14   into the Hex block chain.  And that has very significant

15   implications for the securities analysis.

16           We've also moved to dismiss.  And under Judge Amon's

17   rules, we lodge that with the Commission staff, but we don't

18   file it on her docket until briefing is complete.

19           We brought a copy of the motion to dismiss if it

20   would be helpful for Your Honor to review it.  We can either

21   transmit it electronically, but we also have a copy here if

22   you'd like.

23           In brief, and I think this begins to get to why we

24   believe a stay of discovery is appropriate, we argue that there

25   are very strong personal jurisdictional defenses.

1          As counsel acknowledged, Mr. Heart is not in the

2     United States.  We don't believe the record, particularly as

3     alleged in the complaint, establishes that he purposely availed

4     himself of this forum.

5          One of the things that is actually quite interesting

6     is the letter that counsel filed on Tuesday.  We actually think

7     that strengthens our case.

8          In counsel's letter on Tuesday, they have introduced

9     new facts that were not alleged in the complaint.  That is in

10     the letter.

11          You can -- I'm happy to point you to those, but we

12     think we've already hit a nerve with our motion that there are

13     failings in the complaint and it has not alleged sufficient

14     facts to put him here in the United States subject to this

15     Court's jurisdiction.

16          In addition, the securities laws require that the

17     alleged domestic transactions in securities under the Morrison

18     v. National Australia Bank case, we believe and we argue in our

19     motion to dismiss that the SEC has failed to allege domestic

20     transactions.

21          Simply pointing to the fact that people in the United

22     States may have acquired Hex tokens is insufficient under

23     Morrison and the supporting case law such as absolute activist.

24     So much they're controlling 2nd Circuit case.  They actually

25     need to allege where irrevocable liability was incurred.  And

1    the complaint does not do that.

2            We raise arguments concerning whether or not they've

3    alleged the foundational contract required under the investment

4    contract analysis under the securities laws.

5            And then, we've also raised, and this is novel to

6    this case, but we think a critically important issue First

7    Amendment arguments.

8            Much of the complaint focuses on the words that Mr.

9    Heart said.  And the complaint alleges that those words, the

10   words that they have cherry picked out of hours and hours of

11   YouTube videos that Mr. Heart recorded make this code, these

12   Hex tokens a security.

13           Now one of the things that the complaint does is it

14   dismisses out of hand other words that Mr. Heart said where he

15   explicitly disavows particular aspects that the Commission

16   would need to show to establish a security.

17           So this case presents really an interesting case

18   where some of -- under the Commission's use, some of Mr.

19   Heart's word create a security, but they ignore the other words

20   that show why it's not a security.  So we think that that

21   actually raises important First Amendment issues.

22           In addition, counsel mentioned the PulseChain and

23   PulseX projects.  Those projects were explicitly undertook with

24   a free speech direction.

25           The idea was that people contributed to that project

1    if they -- to show that they believe in free speech, that they

2    believe in blockchain.

3         And those very express words again that the

4    Commission chooses to ignore where Mr. Heart said you're

5    sacrificing your money.  I promise you nothing.  If you donate

6    to this project, the money is gone.  Nothing will come of it.

7         So there are some very serious hurdles that we think

8    the Commission has not and cannot overcome on the pleadings.

9    It's a bit of a sidebar, but it's also worth noting that the

10   caption, these three entities Hex, PulseChain, and PulseX that

11   are in the complaint, we here at counsel table only represent

12   Mr. Heart.

13        And something that's going to be grappled with and

14   needs to be grappled we think is another reason why the motion

15   to stay is appropriate is we don't really understand how they

16   purport to name these three entities as Defendants, or they're

17   not entities, I misspoke.

18        Hex as they allege is a token.  It's a piece of code.

19   PulseChain, they allege purports to be a fork of the Ethereum

20   blockchain.  So post chain is a database.

21        And PulseX, they describe as a decentralized protocol

22   on the Ethereum block chain.  Again, code.

23        We're quite frankly confused as to how you can name

24   bits of code as Defendants, how you can say that bits of code

25   are alter egos.  That needs to be resolved before we can

1    proceed with discovery.

2            There's more to say on the motion to stay.  So I know

3    I've gone a little bit past it.  And I'm happy to continue or

4    if Your Honor has questions before we get to that.

5            THE COURT:  I did.  So you say that you're

6    representing Mr. Heart, not Hex, PulseChain, or PulseX?

7            MR. LIFTIK:  That's correct.

8            THE COURT:  So is anybody representing those three

9    entities?

10           MR. LIFTIK:  Not that we're aware of, Your Honor.

11           THE COURT:  So, technically, they would be in default

12   by not being represented?

13           MR. LIFTIK:  I don't --

14           THE COURT:  They're named as Defendants, and whether

15   they're proper Defendants or not is a different issue, but if

16   you're clearly not representing them, then the procedural

17   posture is that they will be in default.

18           And you're not here to speak on behalf of them

19   whether they're entities or code or something else.  So we just

20   want to be clear that they're -- they, if they were found to be

21   proper entities are in default by virtue of not appearing?

22           MR. LIFTIK:  Well, I don't think they've been served.

23           THE COURT:  Oh, okay.  So, okay.  That sounds good.

24   And I also notice everybody's been saying Mr. Heart, even

25   though the caption is Mr. Schueler.  So is Mr. Schueler not his

1    name?  It's Mr. Heart?

2              MR. LIFTIK:  His preferred name is Mr. Heart.  His

3    legal name is Mr. Schueler.

4              THE COURT:  Okay, okay, so we should be calling him

5    Mr. Heart.  And then, I understand that your motion to dismiss

6    is on two grounds, personal jurisdiction and First Amendment;

7    is that right?

8              MR. LIFTIK:  It's on a number of grounds.  It's on

9    personal jurisdiction, so 12(b)(2).  And then 12(b)(6) and the

10   grounds for the motion include what we call the Morrison

11   argument, what we call the no contract argument, the First

12   Amendment argument.

13             And then, they've also alleged a fraud claim.  And so

14   under Rule 9(b), we've alleged that or we contend that they've

15   not met the particularity requirements of Rule 9(b).

16             THE COURT:  All right, okay.  And the Morrison

17   argument is a personal jurisdiction one, isn't it?

18             MR. LIFTIK:  It is not actually, Your Honor.

19   Morrison is a substantive holding that is not a jurisdictional

20   holding, even though it sounds in jurisdiction or standing, but

21   it's been held not to be.

22             THE COURT:  Right.  And for personal jurisdiction

23   purposes, not every fact needs to be within the four corners of

24   the complaint, right?  Personal jurisdiction could be based on

25   things that are developed as facts on the record.  It doesn't

1    have to be in the complaint.

2              MR. LIFTIK:  We're aware that it can extend the four

3    corners.  What we had when we filed our motion to dismiss was

4    only the four corners of the complaint.

5              And if Commission would choose to put forth evidence

6    to -- then we can sort of address that in supplemental

7    briefing.

8              THE COURT:  Right.

9              MR. LIFTIK:  The point that I wish to raise in their

10   letter is that they've already started to bring in some without

11   citation, they've started to bring in extra allegations, but

12   there's no citations.  There's no evidence.  They've just

13   started to allege additional I guess I call them facts, but

14   they're not really before us.

15             THE COURT:  Right.  And the motion to dismiss has

16   been served.  The opposition has not yet been served.  So you

17   don't --

18             MR. LIFTIK:  I don't what the arguments will be,

19   correct, Your Honor.

20             THE COURT:  All right, that's fair, thank you.  So

21   thank you for that overview.  That was very helpful.

22             Let me hear then with regard to discovery what the

23   Commission is intending to be the scope of the discovery and if

24   you have any kind of plan in terms of the stages of the

25   discovery that you're proposing.

1          And then, I'll hear from the Defendant as far -- and

2     I'll just say Defendant because it's you're only the one about

3     why that should not go forward, okay?

4          So, Mr. Gulde, I'll hear from you.

5          MR. GULDE:  Sure, Your Honor.  Our first ask is that

6     we move forward with discovery as it would be in any case where

7     we would serve discovery, both written discovery, document

8     discovery, and eventually, a deposition, but that wouldn't be

9     right away from Mr. Heart.

10         And notably, although we mentioned in our letter it

11    does answer some of the complexity here, you know, we believe

12    we've served Hex, PulseX, and PulseChain to the extent you can

13    serve them.

14         And granted, there is some uncertainty here partially

15    because we weren't able to conduct a fulsome investigation

16    because of Mr. Heart's noncompliance.

17         But we do believe they had been served.  But we also

18    believe as we said in our letter that anything that we'd be

19    seeking of Hex, PulseX, PulseChain could be answered by the

20    human being Richard Heart.

21         So our ask would be to just start with discovery.  We

22    don't need depositions right away.  That can wait from the

23    parties through Mr. Heart.

24         And then also, on a -- on the same track, immediately

25    start discovery on those third-parties that we mentioned

1    including promoters, developers of Hex, PulseX, and PulseChain.

2         We are happy to discuss fallback positions if the

3    Court is reluctant to let discovery go forward on that sort of

4    full spectrum.

5         One that makes sense immediately would be something

6    that would give the SEC access to materials that we asked for

7    19 months ago as part of the investigation.  So document

8    discovery from Mr. Heart related to all of these offerings,

9    coinciding with an effort to open up full discovery as to

10   third-parties.

11        And I don't believe that would prejudice the

12   Defendants because they've got plenty of folks to handle

13   defending any of those depositions or raising any issues that

14   they see fit.

15        So, you know, that's our big ask.  And then, that's

16   our fallback.

17        THE COURT:  Okay, for purposes of responding to the

18   motion to dismiss, do you need discovery?

19        MR. GULDE:  Need is a tough question.  I don't think

20   we need it.  To represent my client ably, I think I do say we

21   need it because there are things that are left to be found from

22   Mr. Heart from third-parties that would certainly be relevant.

23        So while I think we can survive a motion to dismiss

24   without it, that would not be competent advocacy.  And we

25   should absolutely seek additional discovery to what we have

1    right now to ably do that.

2          THE COURT:  Well, I guess I shouldn't be so cryptic.

3    Do you need personal jurisdiction discovery because I've seen

4    that happen in other cases where if the challenge is to

5    personal jurisdiction, sometimes the party defending says I

6    don't actually know.  I -- we have this kind of information,

7    but we need more discovery to get the full spectrum.

8          MR. GULDE:  Maybe I'm being too cute.  I'm confident

9    where we are.

10         THE COURT:  Okay, that's fine.

11         MR. GULDE:  But yes, we need it in that we're going

12   to seek it and it will definitely be relevant to the issues of

13   personal jurisdiction.

14         THE COURT:  Okay.  So it's just a dispute as to the

15   word need, okay.

16         MR. GULDE:  But I think it's a yes.

17         THE COURT:  Okay.  And for the third-party, those are

18   nonparties.  So you mentioned that the Defendant might want his

19   lawyers present, but you're not seeking the discovery?  The

20   promoters and developers as far as you know are as you call

21   them third-parties nonparties?

22         MR. GULDE:  Your Honor, I don't know -- I have no

23   idea if they're represented by any of these folks or if they

24   are associated with Mr. Heart in a way that would make them

25   parties to this case or aligned with the party in the case.

1          And I mention that just to say that they certainly

2    can attend the depositions of those folks.

3          THE COURT:  Right, but in assessing burden,

4    that's -- that would be the extent of burden there might be on

5    the Defendant?

6          MR. GULDE:  That's right.

7          THE COURT:  Yeah, okay, very good.  Thank you.

8          So Mr. Liftik or somebody else with Defendant?

9          MR. LIFTIK:  Thank you, Your Honor.  Just taking a

10   step back and looking at the test for why we believe that a

11   stay of discovery is warranted, it's a three factor test as I'm

12   sure Your Honor is familiar with.

13         Strong showing that the claim is unmeritorious,

14   breadth of the discovery that is sought, and the prejudice

15   might be, that might be suffered by the other side.

16         We want to really just focus on -- walk through those

17   briefly.  On the merits of the motion to dismiss, why we

18   believe the claim is unmeritorious for these purposes, we're

19   really focusing on two arguments, the personal jurisdiction

20   argument and the Morrison argument.  Our Rule 9(b) obviously

21   does not dispose of the entire case, so we're putting that

22   aside for these purposes.

23         There's a number of cases that support us.  We think

24   the Vida Press (phonetic), Eastern District of New York 2022

25   and the Paladino (phonetic) case of Eastern District of New

1     York in 2024, those are magistrate judge orders granting stays

2     of discovery.

3              And we think they're particularly instructive because

4     there's motions to dismiss raise personal jurisdiction

5     challenges.

6              And the Paladino case actually goes even further.  I

7     think there's a nice analogy in one of the arguments in a

8     motion to dismiss was an anti-trust standing argument.

9              That's a -- I'd say that's sort of a rough analogy to

10    the Morrison argument in terms of whether or not there's even a

11    domestic securities transaction such that the case can go

12    forward for the Commission.

13             So, you know, obviously, I'm not here to have a

14    hearing on a motion to dismiss, but on personal jurisdiction, I

15    think Your Honor only needs to look to Judge Amon's Plexcorp.

16    (phonetic) case, which essentially reads like a checklist of

17    the things not alleged in the complaint.

18             In that case, they allege business travel to the

19    United States.  They allege the use of U.S.-based payment

20    systems.  And they alleged transactions on a website that was

21    hosted and purchased from a U.S. website hoster.

22             None of those things are alleged in our complaint.

23    And we think that the record and our motion establishes that he

24    didn't reach out and avail himself of the forum in any

25    capacity, which is as required under the SPV Osus (phonetic)

1      case, which is 2nd Circuit from 2018.

2              Any statements made by Mr. Heart on the Internet,

3      those are general statements.  There's a pretty robust body of

4      case law that talks about simply taking advantage of the

5      Internet does not create jurisdiction in the United States.

6              The Commission has raised the issue that part of the

7      technologies that we're talking about here are based on

8      something called Uniswap, which is an existing decentralized

9      exchange.

10             And they make the point that Uniswap was developed by

11     people who live in Brooklyn.  Well, if we unwind that a little

12     bit, there's no allegation or could there be that Mr. Heart is

13     affiliated in any way with Uniswap.

14             And so, simply saying that because Uniswap is based

15     in the United States or the developers, Uniswap is

16     descentralized, it's all over the world, but the Uniswap

17     developers were based in Brooklyn, if you build something based

18     on that, that gives you jurisdiction.

19             And that's essentially like saying if you issue

20     French bonds from a French company, but you base the bond

21     indenture on a form that you found from the United States, that

22     those French bonds would be subject to U.S. jurisdiction.  It

23     just doesn't track.

24             THE COURT:  Where was your client when he made these

25     statements?

1          MR. LIFTIK:  Well, they're outside the United States,

2     entirely outside the United States.

3          THE COURT:  Okay, so and the statements you said were

4     just on the Internet, not directed at the United States?

5          MR. LIFTIK:  Correct.  These are posted generally for

6     anyone in the world to see on the Internet.

7          THE COURT:  And where would they posted?

8          MR. LIFTIK:  YouTube and other channels.

9          THE COURT:  Okay, go ahead.  I was just curious about

10    that.

11         MR. LIFTIK:  Sure.  There's -- the Commission argues

12    in their letter that Morrison does not apply to Section 5

13    cases.  There's contrary authority to that.

14         The Hallsworth v. Bee Protocol (phonetic) case and

15    the recent decision by Judge Torres in the Southern District in

16    the Whipple (phonetic) case established that Morrison can be

17    used to show that you need to allege a domestic transaction for

18    a Section 5, which is the unregistered transactions allegation

19    that they have.

20         So the point, and obviously we can get into more

21    here, but the point is that these are strong arguments that we

22    believe pose a serious threat to the entire action.

23         On the burden and the breadth of discovery, let's

24    pause and focus on the subpoena that Mr. Gulde mentioned.  The

25    SEC has had extensive opportunity, unique opportunities as a

1    civil litigant, that regular civil litigants don't have to

2    conduct in investigation before they file their action.

3          And as Mr. Gulde has described, they alleged they

4    served a subpoena on Mr. Heart.  They also allege that they

5    served all kinds of other manner of subpoenas on third-parties.

6    And then, they did nothing.

7          THE COURT:  Well, I thought that Mr. Gulde's

8    description was that your client, ignored the subpoena that was

9    properly served.

10          MR. LIFTIK:  They're alleging Mr. Heart did not

11    respond to the subpoena, but the SEC has unique tools.

12          THE COURT:  But did he respond to the subpoena and

13    they just missed it?

14          MR. LIFTIK:  No, he did not.

15          THE COURT:  Okay, so he didn't respond?

16          MR. LIFTIK:  He did not respond to the subpoena, but

17    they did not move to compel.  They did not seek to follow up

18    with him in any way.

19          We're not aware of any miscellaneous actions seeking

20    to compel production of documents for any of these

21    third-parties that they have subpoenaed.

22          The idea that it's now been 19 months since that

23    subpoena was served, the idea that suddenly now we need to

24    engage in discovery when they could have pursued other

25    remedies, it's not to say discovery shouldn't happen at some

1    point, but to let they play out, let all jurisdictional

2    arguments play out it's particularly in part where you're

3    talking about a defendant that is not in the United States.

4         So the idea of Mr. Heart being subjected to discovery

5    in our contention that is that this Court does not have

6    jurisdiction over him is why we're particularly moving here for

7    a stay of discovery.

8         Let's also look at what we think the burden could be.

9    And we're not here to argue that there aren't lawyers to help

10   deal with it.

11        But the subpoena that the investigative subpoena that

12   the SEC attached to their letter gives us a roadmap for what

13   they would ask for.

14        And it's exceptionally broad.  They seek all kinds of

15   personal financial information from Mr. Heart, all these

16   communications with participants in the Hex project or any

17   individual discussing Hex is a virtually unrestricted request

18   for Mr. Heart's communications over years relating to this

19   project that they allege he's been at the center of.  All

20   documents related to the development of Hex.  That -- extensive

21   documents.

22        So, you know, we know that the -- we know that

23   the -- we're going to be fighting about a very broad subpoena

24   if regular discovery were to open.

25        And then, we have this issue of the parties.  In

1    their investigative subpoena, they refer to Hex the way one

2    would refer to a company.  They say Hex includes all its

3    parents and affiliates, et cetera, et cetera.

4            Well, we've got to resolve this.  Just because they

5    allege that it's a unincorporated entity doesn't make it so.

6            THE COURT:  How will it be resolved?

7            MR. LIFTIK:  Well, I mean, our contention is that Mr.

8    Heart only has his own documents and there is no Hex's code.

9    That's our position.  And I think it's their burden to

10   establish that somehow Hex is something other than that.

11           If we go to the risk of prejudice, as we've talked

12   about, we think that there's very little risk of prejudice.

13   They -- the Commission's been content to let these subpoenas go

14   unresponded to for, you know, 19 months now.

15           And so waiting a few more months for the motion to

16   dismiss, process to play itself out, we don't believe would

17   hurt the Commission's interests here.

18           All that said, Your Honor, you know, while we believe

19   that discovery should be stayed as we put in the record, we did

20   approach the Commission about limited discovery and we weren't

21   able to -- well, they said, no, they needed full discovery.  So

22   that's fundamentally why we're here today.

23           THE COURT:  Okay, and what is your proposal for

24   limited discovery?

25           MR. LIFTIK:  I'm confident that if your order were to

1    honor it -- order it, we could have a productive meet and

2    confer and come up with some agreement, but we believe that

3    there are some ways to limit discovery.

4              Off the top of my head, some of the ideas could be

5    Rule 26 disclosures and perhaps some limited RFPs.  Another way

6    to approach it will be to talk about producing actual documents

7    but leave e-coms, you know, emails and messages, et cetera for

8    later because that's where things start to get very burdensome

9    and significant.

10             THE COURT:  Okay.  All right, great.

11             And Mr. Gulde, I don't remember if you addressed the

12   three-prong test particularly.  So I'll just give you a quick

13   opportunity if you want to.

14             MR. GULDE:  Sure, sure, I'm happy to.  Excuse me.

15   I'm happy to do that.  You know, whether -- I mean, the main

16   idea in this case and why we led with it is our prejudice.  And

17   I think characterizing us as being content to let 19 months run

18   is a little bit off the mark.

19             As I said before, we -- the SEC was presented with a

20   very difficult choice in terms of how to try to marshal

21   evidence in this case.

22             And instead of pursuing multitudinous miscellaneous

23   actions, we chose to go forward as we have, believing that we

24   could kick in the discovery process to obtain needed evidence.

25             And notably, I'm not sure we would be having exactly

1    this conversation if not for Mr. Heart's claim when he was

2    describing this in his letter to the Court overtly saying that

3    the SEC is not prejudiced because we've basically had a bite at

4    this apple.

5            To make that claim while knowing you were served with

6    a subpoena, it was galling to me.  So that's why I've reacted

7    as I have there.

8            The SEC, as we've stated, is at risk of further

9    spoliation of evidence.  And we represent the public interest

10   here.  It's hackneyed, but justice delayed is justice denied.

11   And the people, it's my obligation to argue on behalf of the

12   people to air this information and figure out what was really

13   happening here.

14           As to the two main arguments that they've made about

15   personal jurisdiction and extraterritoriality, I would ask Mr.

16   Kuruvilla to discuss it.

17           MR. KURUVILLA:  Sure, Your Honor.  So just to step

18   back for a second, Your Honor, just to address a point that Mr.

19   Liftik made earlier about one part of their motion, which is

20   that these offerings are not securities, I would just -- and my

21   understanding of the basis of that argument is that there was

22   not a formal contract here between the issuer and the investor.

23           The test for determining whether or not these assets

24   are securities is set forth in the well-known SEC v. Howey

25   case.

1          And the elements for that test are whether or not

2   there's an investment of money in a common enterprise with an

3   expectation of profit from the efforts of the developers.

4          And it's our position and we've pled it in the

5   complaint that the -- that each of those offerings clearly meet

6   the Howey test and that there are -- courts have rejected this

7   argument that there needs to be a formal contract of some sort

8   in order to establish or meet the definition of an investment

9   contract under the definition of what a security is.

10         So we believe that that, you know, portion of the

11  motion is -- as the others are, you know, without merit and

12  that'll be shown, you know, we haven't put together our

13  opposition, but just previewing what our arguments would be.

14         As far as personal jurisdiction is concerned, there

15  we have pled enough in the complaint in our view to clearly

16  establish personal jurisdiction.

17         There are -- the standard of course is whether or not

18  there's been a purposeful availment.  There's minimum contacts

19  in the United States or in the forum state.

20         Mr. Heart marketed these offerings.  And there is a

21  body of case law and I would say even the Plexcorp case, which

22  Mr. Liftik referenced, in that case, one of the basis that the

23  Court set forth was that contacts were created in the forum

24  state by marketing via the Internet.  So that was what was done

25  here.  He marketed over social media and websites.

1          There's at least one investor that we know of in

2     Brooklyn who invested in the -- in Hex-based I believe Hex or

3     Pulse with the expectation that there was going to be

4     a -- there was going to be profit by purchasing this digital

5     security.  So that's one investor that we know of for sure

6     who's in New York.

7          One-third -- our understanding is that one-third of

8     the web traffic that occurred during the Hex offering came from

9     the United States.  And so, Mr. Heart was clearly aware that

10    his marketing efforts were making contacts in the United

11    States.

12         And as I said, at least one investor that we know of

13    is in Brooklyn.  And there's the additional fact that we have

14    in our letter that he -- that Mr. Heart engaged with a

15    developer in the U.S. to help program the software for I

16    believe Hex.

17         So we believe there's enough in the complaint to

18    establish, you know, personal jurisdiction.  So -- we and

19    again, we'll formulate these arguments further in our

20    opposition.

21         With respect to the Morrison arguments about

22    extraterritoriality, the -- anti-fraud provisions -- let me

23    step back.  Congress with the Dodd Frank Act we believe it's

24    our position overrode the Morrison case with respect to the

25    anti-fraud provisions of the securities laws.

1        And it's no longer the test that there has to be a

2   domestic transaction in a security in order for the anti-fraud

3   security provisions to extend extraterritorially.

4        The test rather is the test that existed before

5   Morrison, which is a conduct and effects test.  And that's

6   whether or not there's conduct taken in a foreign jurisdiction

7   that has a foreseeable substantial effect in -- domestically in

8   the United States.

9        And we believe all the facts that I laid earlier with

10  respect to personal jurisdiction, the marketing efforts that

11  were the markets of websites, through social media to the

12  United States, that these would establish that, you know, this

13  conduct while taken in a foreign jurisdiction clearly had the

14  effect of creating a securities market here in the United

15  States.

16       So, again, these are all arguments that we'll flush

17  out further in the opposition, but we believe they're

18  meritorious arguments and that, you know, the motion will be

19  defeated.

20       MR. GULDE:  And I'm realizing I didn't hit the third

21  one, burden to other folks.  A lot is being made of the various

22  names on the caption, but as we said in our letter, Richard

23  Heart can answer these things.  And he's a guy who raised a

24  billion.  And he's hired all these lawyers to come here.  I

25  think he can answer this with -- and recognize that litigation

1    is no joke.  And I'm not minimizing that there is a burden on

2    him, but it is not an undue burden.

3                THE COURT:  All right, thank you.

4                So, thank you, everybody.  That was excellent and

5    extremely helpful.

6                So I'm going to apply the third-part test.  The first

7    is whether there's a strong showing that Plaintiff's claims are

8    unmeritorious.

9                And here, the parties have given me a preview of what

10   the motion to dismiss and the opposition will look like.  And I

11   can't say that it is a strong showing of lack of merit.  I am

12   not in a position to rule on that.  That is up to Judge Amon,

13   but on its face, I can't say that there's a strong showing that

14   there's no merit to the claims here.

15               As far as the prejudice to the Plaintiff, I see that

16   the Commission has been trying to investigate this case.  And

17   there are many gaps in its knowledge.  I haven't heard that

18   it's specific information as to the time sensitivity, but I

19   think as time does go by, it -- there is going to be prejudice.

20               I see the motion to dismiss is not going to be fully

21   briefed until August.  There's oral argument in October.  And

22   so, it could be next year by the time there's a decision on

23   that.

24               And I don't -- I think in that time, things can get

25   lost.  I'm also very concerned as I think Defendant recognizes

1    that the issue of who the parties are needs to be resolved

2    quickly as well so that we can move forward.

3           And if it's an open issue as to whether Hex, Pulse,

4    and PulseX are properly sued and should be brought in, I think

5    that needs to be resolved sooner rather than later so that by

6    the time the motion to dismiss is resolved, we're clear on who

7    they are, whether they're represented, whether they've been

8    served, and we can go forward.

9           So if we were to wait and those questions

10   are -- remain unanswered, I think there is prejudice both to

11   the Commission and also to the conduct of this litigation.

12          And then, the final part about the burden, I

13   appreciate that there's always going to be some burden, but I

14   don't find that it's an undue burden based on the fact that

15   this case is -- there isn't a strong showing that the case is

16   going to be dismissed, and therefore, that Mr. Heart would be

17   relieved of any obligation to engage in litigation.

18          And so, given where we are since it's -- and in light

19   of the fact that there is quite a bit of third-party discovery

20   that needs to go forward, I think the burden on Mr. Heart is

21   not -- weighing everything, I don't think it outweighs the need

22   for the discovery in this case.

23          I also consider Mr. Liftik's proposal that you not

24   engage in electronic discovery until later.  I don't think

25   that's a good idea, because it seems to me that almost

1    everything in this case is likely to be electronic, given the

2    way the facts have been described.  So while that is sometimes

3    appropriate, I don't think that that makes sense here.

4         Now if the parties want to engage in a discussion as

5    to how the discovery should go forward in an orderly and

6    efficient and effective way, you're free to do that.

7         So, it may be that you can get discovery very quickly

8    on these three mystery Defendants to figure out who exactly

9    they are, and can they be sued, and have they been served, and

10   who can -- how they can appear, I think that that should go

11   forward quickly.

12        Which is not to say that the other information, other

13   discovery should not go forward, but if the clients -- if the

14   parties want to have a discussion about how to move forward,

15   you're free to do that.  And so, I will require that you meet

16   and confer and come up with a discovery plan.

17        And so, like I said, you're free to stage the

18   discovery in the coming months to say this part will happen by

19   this date, this will happen by that date, but I do need to have

20   a proposed discovery plan, so that I can enter a scheduling

21   order in this case and let the motion to dismiss play out

22   before Judge Amon according to her schedule.

23        So why don't I give the parties three weeks to come

24   up with a discovery plan?  And that will take us to May 2nd.

25   So no later than May 2nd, I would like to see a proposed -- a

1    joint proposed scheduling order.

2            I have a form that you can fill out.  I think it's

3    useful to have it in that grid format, but if the parties want

4    to do something else, and like I said if you want to be more

5    detailed as to interim deadlines, you're free to do that, okay,

6    but use that as a guide.

7            And you should have dates for the completion of fact

8    discovery.  And then, if you're intending to have expert

9    discovery, a proposal for that as well.

10           And then, I will consider it.  If it's clear based on

11   what you've submitted to me that there aren't any disputes and

12   you're proposing that and if it looks reasonable, I can

13   certainly just enter it, but if I have any questions or if the

14   parties have disputes as to the content of that discovery, I

15   will have another conference and then we can talk about it.

16   Okay.

17           So, at the interim conferences, I tend to have by

18   phone because I think that way, I can schedule them more

19   quickly.  My goal is always when I see a dispute that the

20   parties have raised jointly to just schedule it within a matter

21   of days.

22           The initial conference, it's useful to have everybody

23   in person and I appreciate seeing everybody.  But just to let

24   you know, unless there's a good reason to bring everybody in, I

25   usually do that by phone, which again, is not to say that if

1    there's a discovery dispute that I think would benefit from

2    having everybody in the room together, I wouldn't have a

3    conference in person, but that's just to give you an idea of

4    how I generally manage cases.

5             Is there anything else that we need to discuss today?

6    Mr. Gulde?

7             MR. GULDE:  Not from the SEC, Your Honor.

8             THE COURT:  All right, Mr. Liftik and team?

9             MR. LIFTIK:  Nothing, thank you, Your Honor.

10            THE COURT:  All right, very good.  So I will look for

11   that proposed -- the joint proposed scheduling order as we move

12   forward with the case management here.  Thank you, everyone.

13            MR. KURUVILLA:  Thank you, Your Honor.

14        (Proceedings concluded at 11:27 a.m.)

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE**

     I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Chris Hwang*
_____    May 14, 2024

Chris Hwang          Date

Court Reporter